**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER ROGERS, RICHARD BENAVIDES, BLAKE TAYLOR, BRIAN BRINCKS, RENE CAVAZOS, JUVENTINO MONTELLANO, JASON CAVAZOS, LINDELL COPELAND, RUDY MERCADO, RICHARD SMITH, LAWRENCE GARCIA, ANTHONY SHANE PALMER, PHILLIP SAMPSON, CLAYTON REED, JAMES GRAY, CORY MCALISTER, TOMMY JENNINGS, and LARRY PINA, | § § § § § § § § § § § § § § § | |
| **Plaintiffs,** | § § | **CASE NO. 1:17-CV-457-ADA-JCM** |
| **v.** | § § § | |
| **CITY OF WACO, TEXAS, et al,** | § § | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

**TO:   THE HONORABLE ALAN D ALBRIGHT,
       UNITED STATES DISTRICT COURT JUDGE**

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Rules 1(f) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court are Defendants Frost and Schwartz's Motions to Dismiss (ECF No. 25, 43); Defendants Abelino Reyna and McLennan County's Motion to Dismiss (ECF No. 26, 44); and Defendants City of Waco, Brent Stroman, Manuel Chavez, Robert Lanning, Jeffrey Rogers, and Patrick Swanton's Motion to

1

Dismiss (ECF Nos. 27, 45); and the City of Waco's Supplement to its Motion to Dismiss (ECF No. 60). For the following reasons, the undersigned **RECOMMENDS** Defendants' Motions be **GRANTED IN PART AND DENIED IN PART**.

## I.    BACKGROUND

This case stems from the Twin Peaks restaurant incident on May 17, 2015. Members of the Bandidos and Cossacks Motorcycle Clubs, along with hundreds of other motorcycling enthusiasts, converged on the restaurant. Tensions between the Bandidos and Cossacks erupted in a shootout that left nine dead and many injured. In the aftermath of the incident, police arrested 177 individuals on charges of Engaging in Organized Criminal Activity. The probable cause affidavit in support of the arrest warrants was the same for each of the 177 arrestees, and a justice of the peace set bond for each of the arrestees at one million dollars. Only one of the criminal cases ever went to trial (the defendant in that case is not a party to the instant action), and those proceedings ended in a mistrial. The state eventually dropped all remaining charges against the arrestees. The Plaintiffs in this case were arrested pursuant to the same probable cause affidavit as the other arrestees. Significantly, these Plaintiffs were also indicted. The indictment was later dismissed.

Plaintiffs bring this case pursuant to 42 U.S.C. § 1983. They allege that the defendants violated their Fourth Amendment rights by obtaining arrest warrants based on a fill-in-the-name affidavit that lacked probable cause. Plaintiffs also allege that the defendants violated their Fourteenth Amendment due process right to be free from unlawful arrest. Finally, Plaintiffs assert that the defendants conspired to commit these violations.

There are three groups of defendants in this case. The first group consists of: the City of Waco, Texas; Brent Stroman, Chief of Police; Robert Lanning, Assistant Chief of Police;

detective Jeffrey Rogers; and police officers Manual Chavez, and Patrick Swanton. The second group is McLennan County, Texas and former McLennan County District Attorney Abelino Reyna. The third group is Steven Schwartz and Christopher Frost, both of whom are special agents of the Texas Department of Public Safety. Plaintiffs sue the City and County as municipalities and the other defendants in their individual capacities. The individual defendants all assert qualified immunity.

## II.    LEGAL STANDARDS

Title 42 U.S.C. § 1983 creates a cause of action against any person who, under color of law, causes another to be deprived of a federally protected constitutional right. Two allegations are required to state a cause of action under 42 U.S.C. § 1983. "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988).

Upon motion or sua sponte, a court may dismiss an action that fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6); *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006). To survive Rule 8, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court begins by identifying which allegations are well-pleaded facts and which are legal conclusions or elemental recitations, accepting as true the former and rejecting the latter. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court need not blindly accept every allegation of fact; properly pleaded allegations

of fact amount to more than just conclusory allegations or legal conclusions "masquerading as factual conclusions." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). The court then determines whether the accepted allegations state a plausible claim to relief. *Id.* at 379.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* For purposes of Rule 12(b)(6), "pleadings" include the complaint, its attachments, and documents referred to in the complaint and central to a plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–499 (5th Cir. 2000).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action barred by qualified immunity. *See Bustillos v. El Paso Cnty. Hosp. Dist.*, 226 F. Supp. 3d 778, 793 (W.D. Tex. 2016) (Martinez, J.) (dismissing a plaintiff's claim based on qualified immunity). Qualified immunity shields government officials from civil liability for claims under federal law unless their conduct "violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because qualified immunity shields "all but the plainly

incompetent or those who knowingly violate the law," the Fifth Circuit considers qualified immunity the norm and admonishes courts to deny a defendant immunity only in rare circumstances. *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (internal quotation marks omitted).

Courts use a two-prong analysis to determine whether an officer is entitled to qualified immunity. *Cole v. Carson*, No. 14-10228, 2019 WL 3928715, at *5 (5th Cir. Aug. 20, 2019), *as revised* (Aug. 21, 2019). A plaintiff must show (1) the official violated a constitutional right; and (2) the constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Reed v. Taylor*, 923 F.3d 411, 414 (5th Cir. 2019). The Supreme Court held in *Pearson* that "the judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." 555 U.S. at 236. Although qualified immunity is an affirmative defense, the plaintiff bears the burden to rebut the defense and assert facts to satisfy both prongs of the analysis. *Brumfield*, 551 F.3d at 326. If a plaintiff fails to establish either prong, the public official is immune from suit. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007).

### III.    ANALYSIS

#### A. Fourteenth Amendment claims

Plaintiffs sue Defendants for violations of their "Due Process rights under the Fourteenth Amendment to be free from unlawful arrest as a result of false and misleading statements that were knowingly, or with reckless disregard, included in the probable cause affidavits." Pls.' 1st Am. Compl. at ¶ 247 (ECF No. 22). The Court notes that Plaintiffs also bring their claims under the Fourth Amendment. But "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that

Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal punctuation omitted). A citizen has a right under the Fourth Amendment to be free from arrest unless the arrest is supported by either a properly issued arrest warrant or probable cause. *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004). "The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Albright*, 510 U.S. at 274. Because the Fourth Amendment covers unlawful arrest, Plaintiffs cannot also seek relief under the Fourteenth Amendment. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010). Accordingly, the undersigned **RECOMMENDS** that Plaintiffs' Fourteenth Amendment claims be **DISMISSED** and will address the claims in the context of the Fourth Amendment.

The Court also notes that Plaintiffs attempt to invoke an exception to the general rule described above, citing *Cole v. Carson*, 802 F.3d 752 (5th Cir. 2015), *vacated sub nom. Hunter v. Cole*, 137 S. Ct. 497 (2016). In *Cole*, the Fifth Circuit recognized deliberate fabrication of evidence by police may create a Fourteenth Amendment claim if such a claim may not be pursued under the Fourth Amendment. *Id.* First, Plaintiffs have a Fourth Amendment claim in this case. Second, the Fifth Circuit issued this decision on September 25, 2015, over four months *after* the shootout at Twin Peaks. Again, to overcome a defendant's qualified immunity, a plaintiff must show that the constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Reed*, 923 F.3d at 414. The exception that Plaintiffs seek to invoke had not yet been recognized in this Circuit at the time their cause of action arose, and as such, any right recognized in *Cole* was not clearly established.

### B. Fourth Amendment

There are two claims against government agents for alleged Fourth Amendment violations in connection with an arrest warrant: (1) claims under *Malley*, 475 U.S. at 335, for which the agent may be liable if he "fil[es] an application for an arrest warrant without probable cause" and "a reasonable well-trained officer . . . would have known that [the] affidavit failed to establish probable cause," *Michalik v. Hermann*, 422 F.3d 252, 259–60 (5th Cir. 2005) (citations and internal quotation marks omitted); and (2) claims under *Franks v. Delaware*, 438 U.S. 154 (1978), for which the agent may be liable if he "makes a false statement knowingly and intentionally, or with reckless disregard for the truth that results in a warrant being issued without probable cause," *Michalik*, 422 F.3d at 258 n.5. In the instant case, Plaintiffs bring claims under both theories.

### 1. *Malley* violation

Plaintiffs allege that the defendants violated their Fourth Amendment rights by presenting a facially deficient warrant affidavit. Pls.' 1st Am. Compl. at ¶¶ 230–31. Plaintiffs argue that the warrant is a general warrant, devoid of any particularized facts related to any of the plaintiffs. *Id.* at ¶ 231. This Court has already addressed these same allegations by other Twin Peaks plaintiffs.

In comparing the identical arrest warrant against *Malley* case law, the Court found that the affidavit was a significant improvement upon the classic bare bones affidavit. *Weaver v. Stroman*, No. 1:16-CV-1195-ADA-JCM, 2019 WL 4738914, at *4 (W.D. Tex. Sept. 27, 2019), *rev'd on other grounds*, 4 F.4th 270 (5th Cir. 2021). The Court specifically found that the "affidavit, prepared in the context of a melee involving multiple shootings and 177 arrests, clearly identifies the subject, the offense, the parties involved, the time and circumstances under which they met, what they wore, identifying characteristics, and the weapons they used." *Id.*

Based on that finding, the Court dismissed those plaintiffs' *Malley* claims. Moreover, the Fifth Circuit held that "standing alone, as the district court held, the warrant affidavit sufficiently alleged probable cause to arrest those to whom its facts applied." *Terwilliger v. Reyna*, 4 F.4th 270, 282 (5th Cir. 2021). Consistent with this Court's prior opinion and the Fifth Circuit affirmation that the warrant affidavit is not facially deficient, the undersigned **RECOMMENDS** that Plaintiffs' *Malley* claims be **DISMISSED.**

### 2. *Franks* **violation**

Plaintiffs also allege that the Defendants violated their Fourth Amendment rights by deliberately or recklessly providing false, material information for use in an affidavit in support of an arrest warrant. *Franks*, 438 U.S. at 171.

> The *Franks* case arose in the context of a search warrant, but its rationale extends to arrest warrants. *See Melton v. Phillips*, 875 F.3d 256, 262 (5th Cir. 2017) (en banc). Liability under *Franks* can arise from either material misstatements or material omissions in warrant affidavits. *Michalik v. Hermann*, 422 F.3d 252, 258 n.5 (5th Cir. 2005); *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980) (citing cases). Functionally, the holding of *Franks* is an exception to the independent intermediary doctrine, which provides that "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (citation and internal quotation marks omitted). But "the chain of causation remains intact if it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Id.* To determine taint, the essential inquiry is whether "there remains sufficient content in the warrant affidavit to support a finding of probable cause" *after* the "material that is the subject of the alleged falsity or reckless disregard is set to one side." *Franks*, 438 U.S. at 171–72, 98 S. Ct. at 2684.

*Terwilliger*, 4 F.4th at 281–82.

This Court previously dismissed all claims against all of the defendants based on the independent intermediary rule. Order (ECF No. 47). The Court reasoned that the grand jury indictments broke the chain of causation because Plaintiffs did not "plead facts rising above the

8

speculative level demonstrating how *each* Defendant tainted the grand jury proceedings by either omitting evidence or misleading the jury." *Id.* at 9. The Fifth Circuit reversed, clarifying the law surrounding the independent intermediary rule.

Generally, if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest. *Wilson*, 33 F.4th 202, 208 (5th Cir. 2020) (citations omitted). This is true even if the independent intermediary's action occurred after the arrest or if the arrestee was never convicted of a crime. *Id.* But the intermediary must actually be independent. *Id.* Thus, defendants can be liable for false arrest if the plaintiff shows that the deliberations were tainted by the defendant's actions. *Id. Franks* is an exception to the intermediary rule. *Id.* For plaintiffs that plead an officer obtained an arrest from a magistrate in violation of *Franks*, nothing more is required to show that the independent intermediary doctrine does not apply to the intermediary's decision. *Id.* That "does not necessarily prevent a *second* intermediary's decision—such as a grand jury's indictment—from triggering the independent intermediary doctrine to ultimately insulate the officer from liability." *Id.* In a *Franks* case where a second intermediary is involved, the plaintiff need only show that the second intermediary's deliberations were tainted such that it did not have all the facts before it necessary to render an independent determination of probable cause. *Id.* at 210. But "there is no requirement to show that each and every defendant . . . tainted the secret grand jury deliberations." *Id.* at 209. The Court further clarified that the plaintiffs "must adequately plead (and ultimately prove) that each defendant falls within the scope of liability for the *Franks* violation allegedly committed in securing the arrest warrant from the magistrate." *Id.* (citations omitted).

The Fifth Circuit reversed and remanded to this Court to determine whether the plaintiffs have adequately pleaded a *Franks* violation with respect to the defendants in this case. The Court will, therefore, first determine whether the plaintiffs have adequately pleaded a *Franks* violation against each defendant.

Plaintiffs allege that Stroman possessed no evidence that Plaintiffs participated in violence but nonetheless approved Reyna's plan to arrest everyone based solely on Reyna's representation that probable cause existed. Pls.' 1st Am. Compl. at ¶¶ 69, 79. They assert that Stroman has publicly acknowledged his responsibility in the decision to arrest the 177 individuals. *Id.* at ¶ 83. They also allege that Stroman "knowingly and intentionally, or with reckless disregard for the truth, caused an affidavit against each Plaintiff to be presented to the Magistrate Judge that [he] knew to be materially false and misleading. *Id.* at ¶ 230. They also allege that "Defendants caused a general warrant" to be used to arrest Plaintiffs. *Id.* at ¶¶ 90.

To be liable for *Franks* violations, a defendant must have actually participated in the preparation of the warrant application, signed the application, or provided information for use in the warrant application. *See Terwilliger*, 4 F.4th at 283. Plaintiffs have not adequately alleged that Stroman did any of these. Plaintiffs acknowledge that Stroman was on vacation on the east coast when the Twin Peaks shooting occurred. Pls.' 1st Am. Compl. at ¶ 78. Plaintiffs do not allege that Stroman participated in the preparation of the warrant affidavit beyond a single phone call in which Stroman allegedly approved Reyna's plan. Accordingly, Plaintiffs' claims against Stroman should be **DISMISSED.**

Plaintiffs allege that Lanning possessed no evidence that Plaintiffs participated in violence, that he received information from investigators that Plaintiffs had no connection to the violence based on evidence gathered in interviews, and ultimately acquiesced in the unlawful

arrests. *Id.* at ¶¶ 69, 70, 85. They also allege that he kept the City manager apprised of developments. *Id.* at ¶ 86. They assert that Lanning "knew the exact wording of the probable cause affidavit and knew at the time it was sworn to and presented to the magistrate for a determination of probable cause that it contained false statements" and caused the affidavit to be presented to the Magistrate Judge. *Id.* at ¶¶ 111, 230. The *Terwilliger* plaintiffs alleged essentially the same things. They alleged that "Lanning was present at the Twin Peaks and . . . was 'actively involved' in the investigation and aware of the entirety of the factual circumstances as well as the contents of the affidavit." *Terwilliger*, 4 F.4th at 284. As the Fifth Circuit held, awareness is not tantamount to assisting in the preparation of the warrant nor does it mean that he provided material information to be presented in the affidavit. Plaintiffs' claims against Lanning should, therefore, be **DISMISSED.**

Plaintiffs allege that Swanton caused Plaintiffs to be arrested for Engaging in Organized Criminal Activity despite a lack of particularized evidence relating to them. Pls.' 1st Am. Compl. at ¶ 47. They further allege that Swanton perpetuated a false narrative that Plaintiffs were involved in the Twin Peaks shooting and affiliated with criminal street gangs. *Id.* at ¶ 119. They assert that Swanton unlawfully acquiesced to a mass arrest unsupported by probable cause. *Id.* at ¶ 85. Finally, they assert that he caused the warrant to be issued by falsely "indicating that Plaintiffs were members of criminal street gangs" and making "material misrepresentations that each Plaintiff regularly associated in criminal activity, which [he] knew would be relied upon in forming a basis for probable cause to arrest Plaintiffs." *Id.* at ¶¶ 110, 109.None of these allegations alleges that he participated in the preparation of the warrant. Nor do Plaintiffs allege that Swanton provided information to be included in the affidavit. Rather Plaintiffs focus

exclusively on Swanton's statements to the media and not to the actual drafting of the warrant affidavit. Accordingly, Plaintiff's claims against Swanton should be **DISMISSED.**

Plaintiff alleges that Rogers caused a warrant to be issued that lacked probable cause by "indicating that each Plaintiff belonged to a criminal street gang" when they were not. *Id.* at ¶ 242. They also alleged that he "made material misrepresentations that each Plaintiff regularly associated in criminal activity, which [he] knew would be relied upon in forming a basis for probable cause to arrest Plaintiffs." *Id.* at ¶ 109. Finally, they allege that he "provided false and misleading information regarding Plaintiffs alleged affiliation with criminal street gangs, which ultimately was a primary factor in causing their false arrest." *Id.* at ¶ 62. Plaintiffs do not allege to whom Rogers provided this information or whether he provided it to be presented in the arrest affidavit. Nor do they allege that he assisted in the preparation of the affidavit. Plaintiffs' claims against Rogers should, therefore, be **DISMISSED.** Plaintiffs' allegations against Frost and Schwartz regarding the preparation of the arrest warrant affidavit are identical to those against Rogers. Plaintiffs' claims against Frost and Schwartz should also be **DISMISSED.**

In *Terwilliger*, the plaintiffs denied affiliation with the Bandidos or Cossacks or any criminal street gang. *Terwilliger*, 4 F.4th at 282. They also alleged that their attire and behavior before and during the incident was lawful. *Id.* The *Terwilliger* plaintiffs further alleged "that the Defendants deliberately excluded relevant information that would have weighed against individualized probable cause, such as video evidence, witness interviews, and membership in motorcycle clubs known to be independent and not affiliated with the Bandidos or Cossacks." *Id.* at 283.

Based on these allegations, and assuming that they were true, the Fifth Circuit held that Chavez and Reyna were within the compass of potential *Franks* liability. *Id.* at 283–84. Chavez

12

was within the scope because he signed the warrant affidavit and swore to the validity of the facts contained therein. *Id.* at 283. Reyna was within the scope because Plaintiffs alleged that "Reyna was provided with evidence both from the scene and interviews of attendees," but directed that "'all bikers wearing colors' should be arrested." *Id.* at 284.

Here, Plaintiffs allege that Chavez signed and swore to all 177 affidavits which contained material misrepresentations. Pls.' 1st Am. Compl. at ¶¶ 97, 99. Plaintiffs also allege that they are not members of a criminal street gang and deny that they regularly associate in the commission of criminal activities. *Id.* at ¶¶ 103, 105, 243 n.8. Finally, they allege that evidence the Defendants possessed shows that they participated in no illegal activity. *Id.* at ¶ 58. These allegations clearly put Chavez in the compass of potential *Franks* liability.

As to Reyna, Plaintiffs allege that he injected himself into the investigation and was primarily responsible for the determination that probable cause existed. *Id.* at ¶ 84. They further allege that investigators provided information learned during interviews directly to Reyna. *Id.* at ¶ 70. These interviews allegedly revealed that Plaintiffs had no connection to the violence that occurred at Twin Peaks. *Id.* These allegations also put Reyna within the compass of potential *Franks* liability.

The Court turns next to whether Plaintiffs have adequately alleged that the grand jury's deliberations were tainted. The Fifth Circuit held that mere allegations of taint may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference. *Wilson v. Stroman*, 33 F.4th at 212. It also observed that "allegations about what was presented or omitted in the grand jury room will in some sense be speculative." *Id.*

Here, Plaintiffs allege that the grand jury's deliberations were "tainted by the use of wholly inaccurate, false, and woefully incomplete information. Pls.' 1st Am. Compl. at ¶ 125.

Plaintiffs allege that the grand jury must have been misled by the presentment of materially misleading and false statements claiming Plaintiffs were members of criminal street gangs because membership in a criminal gang is an essential element of the EIOCA charge Plaintiffs were indicted with. *Id.* at ¶ 129. Plaintiffs further allege upon information and belief that Chavez testified before the grand jury consistently with his sworn affidavit because he testified consistently with the affidavit at examining trials. *Id.* at ¶ 134–38. Plaintiffs also allege that Reyna presented the cases for consideration by the grand jury. *Id.* at ¶ 152. These facts, as alleged, are sufficient to allege that Reyna and Chavez tainted the grand jury such that the independent intermediary rule does not apply. Accordingly, Reyna's and Chavez's Motions to Dismiss should be **DENIED.**

### C. Conspiracy

Plaintiffs also allege that Defendants Stroman, Chavez, Reyna, Lanning, Rogers, Swanton, Schwartz, and Frost "entered into a conspiracy to deprive Plaintiffs of their right to be free from unlawful seizure and incarceration" and "acted in concert either to orchestrate or to carry out the illegal seizure . . . when they knew there was no probable cause to arrest them." *Id.* at ¶ 258. The complaints further states that the Defendants "caused a warrant to be issued" and encouraged Chavez to swear to false statements. *Id.* at ¶ 259–60. Plaintiffs' allegations are functionally identical to the allegations in *Terwilliger*. As the Fifth Circuit held in *Terwilliger*, the Complaints do not contain any sufficiently pled agreement to violate the Plaintiffs' constitutional rights. *Terwilliger*, 4 F.4th at 285. Plaintiffs' conspiracy claims should be **DISMISSED.**

**D. *Monell* claims against the City**

Municipalities, including counties and cities, may be liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cnty.*, 543 F.3d 221, 224 (5th Cir. 2008). In a § 1983 lawsuit against a municipality, a plaintiff must show that his constitutional injury was the result of official policy, custom, or the act of an official policymaker. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690– 91 (1978). Municipalities such as the City of Waco and McLennan County cannot be liable under a theory of respondeat superior, however. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Municipal liability under § 1983 requires proof of three elements: (1) an official policy or custom, of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002); *see also Valle v. City of Houston*, 613 F.3d 536, 541– 42 (5th Cir. 2010).

> The second element may be satisfied by a single decision by a policymaker.
>
> To be sure, "official policy" often refers to formal rules or understandings . . . that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time . . .. However . . . a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983.

*Pembaur*, 475 U.S. 469, 480–81 (1986).

In the instant case, the plaintiffs invoke the single decision exception identified in *Pembaur*. In *Pembaur*, Simon Leis, the Hamilton County, Ohio prosecutor, began an investigation of Dr. Bertold Pembaur for welfare fraud. A grand jury was convened, and the case

15

was assigned to an assistant prosecutor. During the investigation, the grand jury issued subpoenas for two employees of the clinic. When the employees failed to appear, the prosecutor obtained capias warrants for them.

Hamilton County Sheriff's Deputies attempted to execute the warrants at the clinic, but Pembaur refused them entry and blocked the entrance. The deputies contacted the assistant prosecutor assigned to the case, who in turn conferred with Simon Leis, who told the assistant prosecutor to direct the deputies to force their way into the clinic. On those instructions, Cincinnati police officers chopped through the door with an axe and county sheriff's deputies entered the clinic in search of the employees. The doctor later sued the city, the county, the assistant prosecutor, and other defendants under 42 U.S.C. § 1983, alleging that the defendants violated his Fourth and Fourteenth Amendment rights. Notably, the plaintiff did *not* sue Simon Leis, the Hamilton County Prosecutor, and Leis's individual liability was irrelevant. The question before the Court was whether the policymaker's informed decision to break into the clinic without a search warrant was fairly attributable to the county.

> Applying this standard to the case before us, we have little difficulty concluding that the Court of Appeals erred in dismissing petitioner's claim against the county. The Deputy Sheriffs who attempted to serve the capiases at petitioner's clinic found themselves in a difficult situation. Unsure of the proper course of action to follow, they sought instructions from their supervisors. The instructions they received were to follow the orders of the County Prosecutor. The Prosecutor made a considered decision based on his understanding of the law and commanded the officers forcibly to enter petitioner's clinic. *That decision directly caused the violation of petitioner's Fourth Amendment rights.*

*Pembaur*, 475 U.S. at 484 (emphasis added). In ordering the deputies to break into the clinic without a search warrant, the county prosecutor was acting as the final decisionmaker for the county, and the Court ruled that the county could therefore be held liable under § 1983. *Id.* In sum, Leis's subordinates informed him of the salient facts and circumstances of the case and Leis

16

committed to a course of action that directly caused the violation of the plaintiff's rights. His decision was the primary and moving force behind the violation. *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622–23 (5th Cir. 2018).

The instant cases are critically distinguishable from *Pembaur*. Should the Court dismiss Plaintiffs' individual capacity claims against Stroman because Plaintiffs' claims against him were conclusory, there are no allegations to support any unconstitutional activity on Stroman's part. Plaintiffs argue that Stroman's decision to arrest them ultimately caused a constitutional violation and that his directive therefore creates *Pembaur* liability for the City. This level of but-for causation, however, is not fairly attributable to the City. The Fifth Circuit has expressly held that "moving force" causation is more than "but for" causation. *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020). A plaintiff "must show that the final policymaker had the requisite degree of culpability and that [the municipality's] policies were the actual cause of the constitutional violation." *Id.* The plaintiffs have failed to adequately plead any such allegation against Stroman and their claims against the City therefore fail as a matter of law. The Court should, therefore, dismiss Plaintiffs' claims against the City of Waco.

### E. *Monell* claims against the County

Plaintiffs also argue that Defendant Reyna is the final policymaker for McLennan County with regard to the events at Twin Peaks. The County and Reyna dispute this. Local government liability in this context is guided by two considerations. *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 (1997). First, a court must ask "whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." *Id.* (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 738 (1989)) (holding a court must identify "those officials who have the power to make official policy on a particular issue"); *St. Louis v. Praprotnik*, 485 U.S.

17

112, 123 (1988) ("[T]he challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the [municipality's] business."). Second, a court looks to relevant state law. *Id.* (citing *Jett*, 491 U.S. at 737 (""[W]hether a particular official has "final policymaking authority" is a question of state law"" (quoting *Praprotnik*, 485 U.S. at 123))).

Here, the question is whether Defendant Reyna possessed final policymaking authority in the area of ordering arrests. Beyond Plaintiffs' bald conclusion that Reyna had the authority to order the police to make the arrests, there is nothing more before the Court to satisfy this factor. The Fifth Circuit has held that in Texas, the county sheriff is the county's final policymaker in the area of law enforcement—not the district attorney. *Turner v. Upton Cnty.*, 915 F.2d 133, 136 (5th Cir. 1990) (citing *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980)). "Among other responsibilities he is charged with preserving the peace in his jurisdiction and arresting all offenders." *Id.* (citing Tex. Code Crim. P. arts. 2.13, 2.17). The sheriff is McLennan County's final policymaker in this area, and he can "define objectives and choose the means of achieving them" without county supervision. *Rhode v. Denson*, 776 F.2d 107, 109 (5th Cir. 1985).

In sum, Plaintiffs allege that Reyna wrongly determined that the plaintiffs should be arrested based only on their presence at Twin Peaks. As discussed above, the sheriff—not the district attorney—is the final policymaker regarding "preserving the peace and arresting all offenders." *Turner*, 915 F.2d at 136 (emphasis added); Tex. Code Crim. P. arts. 2.17 ("Each sheriff . . . shall arrest all offenders against the laws of the State, in his view or hearing, and take them before the proper court for examination or trial . . .. He shall apprehend and commit to jail all offenders, until an examination or trial can be had.") Thus, regardless of Reyna's involvement

18

in helping to decide whether the arrests should be made, he did not have authority to make municipal policy. *Pembaur*, 475 U.S. at 480.

Plaintiffs argue that Reyna is McLennan County's final policymaker because he "was responsible for devising the overall prosecutorial goals and strategies" of the County on the day of the incident. Even assuming that is accurate, Reyna still cannot be the final policymaker in this context because Plaintiffs complain of wrongful arrests, not of wrongful prosecution. Thus, Reyna's prosecutorial goals and strategies are irrelevant to whether he was the final policymaker in the area of ordering and making arrests, because he had no authority to dictate policy in that area. Accordingly, the County cannot be held liable for Reyna's individual actions.

Plaintiffs also allege that "despite all the obvious wrongs no City of Waco or McLennan County employee has received any discipline or consequence due to their actions thereby ratifying their actions as policy of the City of Waco and McLennan County." *Id.* at ¶ 265. Under certain circumstances, the Fifth Circuit has held that a single decision by a policy maker or a single incident of a constitutional deprivation may constitute a policy for which a municipality may be liable under § 1983. *See Brown v. Bryan Cnty.*, 219 F.3d 450, 459 (5th Cir. 2000); *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985).

In *Grandstaff*, the Fifth Circuit permitted a jury to find a municipal policy after hearing evidence describing an extraordinary series of violent events and the subsequent failure to discipline officers involved in those events. 767 F.2d at 171–72. The Fifth Circuit's reasoning in *Grandstaff* was heavily influenced by the extreme facts of that case:

> [I]n response to a minor traffic violation, three patrol cars engaged in a high speed chase during which they fired wildly at the suspected misdemeanant; the object of this chase took refuge on an innocent person's ranch, where the entire night shift of the city police force converged and proceeded to direct hails of gunfire at anything that moved; although nobody except the police was ever shown to have fired a shot, the innocent rancher was killed when the police shot him in the back

19

as he was emerging from his own vehicle; after this "incompetent and catastrophic performance," which involved a whole series of abusive acts, the officers' supervisors "denied their failures and concerned themselves only with unworthy, if not despicable, means to avoid legal liability."

*Coon v. Ledbetter*, 780 F.2d 1158, 1161 (5th Cir. 1986) (internal citations omitted).

Subsequent Fifth Circuit cases emphasize that the rationale presented in Grandstaff may only be applied to cases with equally extreme factual circumstances. *Id.* at 1161–62; *see also Castro v. McCord*, 259 F. App'x 664, 669 (5th Cir. 2007); *Snyder v. Trepagnier*, 142 F.3d 791, 797–98 (5th Cir. 1998); *Stokes v. Bullins*, 844 F.2d 269, 274 n.8 (1988). In cases without equally extreme facts, the Fifth Circuit does not permit an inference of an unconstitutional custom or policy from a municipality's failure to discipline an officer for a single incident. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1278–79 (5th Cir. 1992) (discussing *Berry v. McLemore*, 670 F.2d 30 (5th Cir. 1982)).

In the instant case, law enforcement officials arrested a large number of people in the confusing aftermath of a melee involving many injuries and multiple shootings in a group of hundreds of motorcyclists. Plaintiffs make no allegation of a culture of recklessness at the City or County. *See Snyder*, 142 F.3d at 798 ("The shooting of Snyder . . . hardly rises to the level of the 'extreme factual circumstances' presented in *Grandstaff*—particularly given the absence of evidence suggesting a culture of recklessness in the NOPD."). The plaintiffs make no allegation of wanton violence on the part of law enforcement, as occurred in *Grandstaff*. The fact that a policymaker defends conduct that is later shown to be unlawful "does not necessarily incur liability on behalf of the municipality." *Peterson v. City of Ft. Worth*, 588 F.3d 838, 848 (5th Cir. 2009) (citing *Coon*, 780 F.2d at 1161–62). Even if this Court subsequently finds that the arrests at issue were unconstitutional, the facts alleged are not remotely close to the reckless violence

and abuse of power discussed in *Grandstaff*. Accordingly, the undersigned **RECOMMENDS** that Plaintiffs' claims against the City and County be **DISMISSED.**

## IV.    CONCLUSION

For the reasons outlined above, the undersigned **RECOMMENDS** that Defendants Frost and Schwartz's Motion to Dismiss (ECF No. 25, 43); Defendants Abelino Reyna and McLennan County's Motion to Dismiss (ECF No. 26, 44); Defendants City of Waco, Brent Stroman, Manuel Chavez, Robert Lanning, Jeffrey Rogers, and Patrick Swanton's Motion to Dismiss (ECF Nos. 27, 45); and the City of Waco's Supplement to its Motion to Dismiss (ECF No. 60) be **GRANTED IN PART AND DENIED IN PART**.

The undersigned specifically **RECOMMENDS** that the following claims be **DISMISSED:** Plaintiffs' Fourteenth Amendment claims against each Defendant; Plaintiffs' Fourth Amendment *Malley* claims against each Defendant; Plaintiffs' Fourth Amendment *Franks* claims against Stroman, Lanning, Swanton, Rogers, Frost, and Schwartz; Plaintiffs' conspiracy claims; Plaintiffs' claims against the City of Waco; and Plaintiffs' claims against the County. The undersigned further **RECOMMENDS** that Defendants' Motions to Dismiss Plaintiffs' *Franks* claims against Reyna and Chavez be **DENIED.**

## V.    OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. Parties filing objections must specifically identify those findings or recommendations to which they object. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the

Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). Except upon grounds of plain error, failing to object shall further bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 150–53; *Douglass*, 79 F.3d at 1415.

**SIGNED this 19th day of July 2024.**

_____

**JEFFREY C. MANSKE**
**UNITED STATES MAGISTRATE JUDGE**

22